Eastern District of Kentucky
F I L E D
SEP 13 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-471-GWU

DARRELL WHITE,                                                                         PLAINTIFF,

VS.                   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

White

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

White

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Darrell E. White, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an adjustment disorder and degenerative disc disease of the lumbar spine "with some spina bifida at L5." (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. White retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 41 years, eighth-grade education, and semi-skilled work experience could perform any jobs if he were limited to "medium" level exertion, and also had the following non-exertional impairments. (Tr. 288). He: (1) could no more than "frequently" stoop, kneel, crouch, bend, crawl, or push/pull or use foot controls

7

or pedals with the lower extremities; (2) needed to avoid concentrated exposure to full body vibration; and (3) had the mental capacity to perform simple, repetitive work tasks in a simple, routine work setting. (Tr. 288). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 289).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. White alleged disability due to severe back pain, although he admitted in his Disability Report that he stopped working because he was laid off. (Tr. 67-8). He stated at the administrative hearing that he could not feel his legs and his back hurt, and was taking three Lorcet tablets a day on prescription from a neurosurgeon, Dr. Denes Martonffy. (Tr. 264, 269). The neurosurgeon had recommended giving him injections in the lower back, but not surgery. (Tr. 270). His other problem was depression, which was related to a bitter divorce and custody battle with his ex-wife, in which he had been accused of child molestation, although he stated that the charges were not true. (Tr. 267-8). Mr. White testified that he was supposed to be at group therapy all day, every day, at the local Comprehensive Care Center, but he had not been able to arrange transportation as yet. (Tr. 271, 273). He had recently been hospitalized for suicidal thoughts after being accused of raping his son, but the

charges were dropped. (Tr. 281). However, he was still depressed about his hospital bill. (Tr. 284). His current medications were Valium, Lorcet, Sinequan and Trazodone. (Tr. 282-3).

As far as his physical condition was concerned, the plaintiff was evaluated on several occasions in 2003 after his alleged onset date by his family physician, Dr. Dan Sotingeanu, who obtained MRIs and x-rays showing a slight compression of the L-1 vertebra and spina bifida occulta at L5. (Tr. 127, 132, 149-50). Physical examinations showed no neurological abnormalities, and Dr. Sotingeanu opined that under the circumstances he did not believe that the plaintiff would require long-term treatment. (Tr. 132). He also indicated on another occasion that the plaintiff "clearly exaggerates his chronic symptoms." (Tr. 130). He referred his patient to Dr. Martonffy, a neurosurgeon.

Dr. Martonffy reviewed the MRI and x-ray evidence showing degenerative disc disease and some spina bifida. (Tr. 196). On physical examination, he found no spasm of the lumbar spine and a normal range of motion, but noted that there was tenderness and positive straight leg raising. (Tr. 196-8). Mr. White declined to undergo lumbar epidural steroid injections, and did not obtain additional MRI scans as the physician requested. (Tr. 194, 196). Dr. Martonffy continued to prescribe Lortab and Valium, but did not list any functional restrictions.

9

Dr. Mark Burns conducted a consultative physical examination on October 18, 2003. (Tr. 119). He apparently did not have any records or objective testing to review, but the physical examination was said to be normal and no restrictions were given. (Tr. 120-3). A state agency physician who subsequently reviewed the record, Dr. Gary Higgason, found no evidence of any "severe" physical impairment. (Tr. 173).

In the absence of any restrictions from examining or reviewing sources, the ALJ's hypothetical physical restrictions are supported by substantial evidence. The plaintiff argues on appeal that the ALJ did not properly evaluate his subjective complaints of pain, asserting that the evidence of degenerative disc disease and spina bifida occulta, along with the findings of tenderness and positive straight leg raising by Dr. Martonffy, provide objective evidence of an underlying condition which could reasonably be expected to produce disabling pain, citing <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986). However, a review of the ALJ's decision demonstrates that he adequately considered the <u>Duncan</u> factors. (Tr. 21). The ALJ correctly noted Dr. Sotingeanu's comment that the plaintiff was "clearly exaggerating his chronic symptoms," the lack of neurological abnormalities or restricted range of motion on examination by any source, and the

plaintiff's failure to agree to the trial of epidural injections as suggested by Dr. Martonffy, despite his complaints of being in constant, incapacitating pain. (Id.).[1]

As far as his mental status was concerned, the plaintiff was consultatively examined by a psychologist, Dr. Robert Fitz, in October, 2003, and was noted to have lapses in concentration that would be typical of anxiety. (Tr. 165). Dr. Fitz also opined that Mr. White likely did not give his best effort in the examination. (Id.). Mr. White related his current mental problems to his wife's departure two years previously, and stated that he been going to therapy at Kentucky River Community Care (KRCC) as recently as two months ago, but was too busy with other appointments to attend sessions there. (Tr. 166). Dr. Fitz diagnosed an adjustment disorder with anxious mood, and assigned a current Global Assessment of Functioning (GAF) score of 62. (Tr. 171). A GAF in this range reflects mild symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-Tr.), p. 34. Dr. Fitz opined that Mr. White would have a "good" ability to understand, remember, and follow instructions and sustain attention to perform simple repetitive tasks, a "fair" ability to relate to others including co-

---

[1] While the plaintiff testified that he could not afford epidural injections, he also stated at the administrative hearing that he did not know how much they would cost, and also admitted to smoking one pack of cigarettes a day. (Tr. 274, 280). The Sixth Circuit has unfavorably viewed a claimant's allegation of inability to afford medical treatment while continuing to expend money on smoking. Sias v. Secretary of Health and Human Services, 861 F.2d 475, 480 (6th Cir. 1988).

workers and supervisors, and a "fair to poor" ability to tolerate the stress and pressures of day-to-day work activity "because he has too many other sources of stress." (Tr. 171). The terms "good," "fair," and "poor" were not defined.

Records from KRCC show that the plaintiff was initially seen in March, 2003, describing problems with a custody battle and allegations of physical and sexual abuse by his ex-wife. (Tr. 117). However, he was noted to have a euthymic mood, and given a diagnosis of adjustment disorder, with a GAF of 81-90. (Tr. 117). A GAF score in this range reflects no more than slight impairment per the DSM-IV-TR. In March, 2004, the plaintiff was seen again, and given a diagnosis of a mood disorder due to a general medical condition, with a GAF of 55. (Tr. 220). This GAF score would reflect "moderate" impairments. It was planned for him to see a therapist regularly and he was given prescriptions for Prozac, Trazodone, and Sinequan. (Tr. 220, 232). The same diagnosis and GAF were reported on April 19, 2004. (Tr. 219).

Mr. White was admitted to the Appalachian Regional Hospital (ARH) from April 29 to May 4, 2004 because of suicidal ideation related to his impending divorce. (Tr. 235). He was given a diagnosis of major depression, recurrent, with suicidal ideations, and a GAF of 30, reflecting an inability to function in almost all areas. (Tr. 236). However, after discharge, his GAF was given as 65, reflecting mild symptoms

12

White

per the DSM-IV-TR, and he was discharged <u>with the specific indication that there were no limitations on activity</u>. (Tr. 233-4).

State agency psychologists who had reviewed the record in late 2003 in early 2004, prior to the more recent treatment from KRCC and the ARH, concluded that the plaintiff would be "moderately limited" in certain areas. (Tr. 175-7, 200-2). However, in view of the fact that the most recent records from the ARH admission indicate that he was discharged with only mild symptoms per GAF score and no restrictions on activities, the ALJ could reasonably have accepted the conclusion of the reviewing sources that Mr. White could perform simple, repetitive tasks in a simple, routine setting. (Tr. 177).

The decision will be affirmed.

This the ___/3___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE